**SIGNED this 13 day of July, 2021.**



**James P. Smith**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 21-50276-JPS |
| | ) | CHAPTER 13 |
| MELISSA A. WOOD, | ) | |
|     DEBTOR | ) | |
| | ) | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

        For Debtor:        Daniel Lewis Wilder
                               Law Offices of Emmett L. Goodman, Jr., LLC
                               544 Mulberry Street
                               Suite 800
                               Macon, GA 31201

        For Creditor:      John H. Coleman
                               Coleman Law, LLC
                               675 Seminole Avenue NE Suite 302
                               Atlanta, GA 30307

                               Edward Berk Sauls
                               Pankey & Horlock, LLC
                               1441 Dunwoody Village Parkway
                               Suite 200
                               Atlanta, GA 30338

**MEMORANDUM OPINION**

Before the Court is the objection by Equity Trust Company as Custodian FBO Robert W. Schumacher IRA ("ETC") to confirmation of Debtor's Chapter 13 plan. ETC, Debtor and the Chapter 13 Trustee have each filed briefs on the legal issues presented. The Court heard further legal argument at a hearing on June 10, 2021. The Court, having considered the facts, legal arguments and the law, now publishes its findings of fact and conclusions of law.

FINDINGS OF FACT

According to the Stipulation of Facts (Docket No. 29) filed by the parties, Debtor filed her Chapter 13 case on March 22, 2021. At all times relevant to the case, Debtor has resided at 251 Buck Road, Gray, Georgia. The property is valued in her bankruptcy schedules at $120,000 and is not subject to a mortgage.

On or about November 5, 2019, the tax commissioner of Jones County, Georgia conducted a tax sale on Debtor's residence. ETC was the successful bidder at the tax sale. The tax sale deed conveying the property to ETC was recorded on December 30, 2019 in the Superior Court of Jones County at Deed Book 1013, Page 349.

ETC initiated the "barment notice process" under O.C.G.A. § 48-4-40 by preparing a barment notice which stated that the right to redeem under state law would be terminated at 4:00 p.m. on March 22, 2021 or thirty (30) days after legal service of the notice, whichever was later. This barment notice was delivered to the Jones County Sheriff, whose office placed a stamp on the notice reflecting that the notice was "RECEIVED" by the Jones County Sheriff on February

3

8, 2021. On February 19, 2021, the Jones County Sheriff served the barment notice personally on Debtor.

Debtor has filed a Chapter 13 plan which treats ETC as a secured creditor with a claim equal to the amount of the redemption price on the date of the filing of the petition herein and pays said claim, plus five (5) percent interest thereon, over the term of the plan.

## LEGAL DISCUSSION

Georgia's property tax sale statutes are found at O.C.G.A. § 48-4-1 to -48. A good description of how the Georgia property tax sale process works is found in *Nat'l Tax Funding, LP v. Harpagon Co., LLC*, 277 Ga. 41, 42-43, 586 S.E 2d 235 (2003). When a property owner does not pay his ad valorem taxes, a lien is created, upon which the tax commissioner of the county can issue a fi.fa. and have the sheriff levy and sell the property, thereby collecting the unpaid taxes. A party who buys at the tax sale receives a tax deed. The tax sale purchaser then holds title to the property in the form of a defeasible fee interest in the property, subject to a statutory right of redemption.

The delinquent tax payer, as well as any other party holding a lien on or interest in the property, may redeem the property. Redemption causes the rescission of the tax sale. Upon redemption, a quit claim deed is executed by the tax sale purchaser back to the original owner of the property.

O.C.G.A. § 48-4-40 provides that the original owner may redeem the property by paying the redemption amount:

(1) At any time within 12 months from the date of the sale; and

> (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48-4-45.

The redemption amount is determined pursuant to the calculations set forth in O.C.G.A. § 48-4-42.

The mechanics of terminating the right of redemption are set forth in O.C.G.A. § 48-4-45, which provides:

> (a) After 12 months from the date of a tax sale, the purchaser at the sale or his heirs, successors, or assigns may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure, as provided for in this article...

to be served on certain defined interest holders, including the original owner of the property.

Numerous courts have addressed the extent to which a debtor can exercise through a bankruptcy plan her redemption rights in property sold at a tax sale. In this district, Judge Carter considered this issue in *Sheppard and Son Properties, LLC*, Case No. 18-11388 (Bankr. M.D. Ga. May 30, 2019) (See Doc. No. 75), when tax sale purchasers filed motions for relief from stay to allow them to send barment notices and extinguish the debtor's redemption rights. The movants argued that cause existed under 11 U.S.C. § 362(d) to grant relief from stay because the debtor owned only the rights of redemption with respect to each of the properties and did not hold title to the underlying properties. The movants argued that, because the debtor did not own the properties, it had no equity in the properties. Thus, the properties could not be considered necessary for an effective reorganization. The movants further argued that, as a matter of law, the debtor could not redeem the properties under its Chapter 11 plan. Thus, the Court addressed two issues: (1) whether the debtor's interests in the properties was property of the bankruptcy estate under section 541(a), and (2) whether the movants, as tax sale purchasers, held secured

claims that could be modified through the plan under section 1123(b)(5).

In an oral decision announced from the bench on May 30, 2019, Judge Carter ruled that, under Georgia case law, the tax sale purchasers had a defeasible fee interest in the respective properties which each had purchased.  However, state law recognized that the original owner retained a bundle of rights with respect to the properties, including the right to possess, the right to collect rents, the right to evict trespassers and the right to redeem the property.  Accordingly, Judge Carter ruled that these rights of the debtor were property of the estate.  Judge Carter further ruled that, because no barment notice had been issued pursuant to O.C.G.A. § 48-4-45 before the petition was filed, the right to redeem was never extinguished and, therefore, became property of the estate upon the filing of the petition.

Judge Carter held that the Supreme Court, in <u>Johnson v. Home State Bank,</u> 501 U.S. 78, 111 S.Ct. 250, 115 L.Ed. 2d 66 (1991), and Congress, in 11 U.S.C. § 101(5), intended for courts to give the term "claim" the broadest available definition.  Since the tax sale purchasers had a right to the redemption amount if the debtor elected to redeem, and their interests were analogous to that of a non-recourse mortgage holder, Judge Carter held that the tax sale purchasers held claims that could be modified and paid pursuant to 11 U.S.C. § 1123(b)(5).  Accordingly, Judge Carter denied the relief from stay.[1]

The bankruptcy and district courts in the Northern District of Georgia have also addressed this issue and reached different conclusions.  Several of the Northern District bankruptcy courts

---

[1] Subsequently, the debtor filed a chapter 11 plan which sought to pay the claims of the tax sale purchasers.  However, because no class of claims impaired under the plan accepted the plan, Judge Carter denied confirmation pursuant to § 1129(a)(10).  Debtor's chapter 11 case was subsequently dismissed.

have ruled that a debtor can pay the redemption amount through a chapter 13 plan.  See Encore Assets, LLC v. Woodley (In re Woodley), 579 B.R. 630 (Bankr. N.D. Ga. 2017); In re Alexander, 578 B.R. 669 (Bankr. N.D. Ga. 2017); Scorpion Group, LLC v. Francis (In re Francis), 489 B.R. 262 (Bankr. N.D. Ga. 2013).  However, one bankruptcy court and two district courts in the Northern District of Georgia have ruled to the contrary.  See Deed Co., LLC v. Jimerson (In re Jimerson), 2018 WL 4926354 (N.D. Ga., Jan. 23, 2018); Callaway v. Harvest Assets, LLC, 2015 U.S. Dist. LEXIS 185160 (N.D. Ga. Oct. 30, 2015); Harvest Assets, LLC v. Edwards (In re Edwards), 2014 Bankr. LEXIS 5432 (Bankr. N.D. Ga., Nov. 13, 2014).  As the court in Woodley explained:

> The judges in this district holding that a debtor cannot redeem through a Chapter 13 plan property sold in a tax sale reason that only the redemption right–not the real property itself–enters the bankruptcy estate; that § 1322 cannot be used to extend the state law redemption period, as § 108(b) speaks directly to the extension of non-bankruptcy deadlines; and that there exists no "claim" secured by any estate property that can be modified under § 1322.  *See generally In re Edwards*, 2014 Bankr. LEXIS, at *6-23; *In re Callaway*, 2015 U.S. Dist. LEXIS 185160, at *12-14.
>
> The judges holding that a Chapter 13 debtor may redeem the property through a plan have done so after concluding that the real property itself enters the bankruptcy estate and that the purchaser holds a "claim" subject to modification in a Chapter 13 plan. Those judges reason that parties' relationship is nearly identical to that between a security deed holder and the homeowner who grants the security deed.  *See, e.g., In re Francis*, 489 B.R. at 266; *In re Jimerson*, 564 B.R. at 435-36, 437, 438; *In re Alexander*, 578 B.R. at 673-74, 674-76....

Woodley, 579 B.R. at 633.

Numerous courts in other jurisdictions have also addressed the issue and reached conflicting conclusions.  See In re Edwards, supra, (collecting and discussing cases).  As noted by the court in Woodley, the split in the Northern District of Georgia, "is characteristic of a broader split across the country on the same issue.  Several courts have commented...that the

7

issue is a close one. *See, e.g., In re Callaway*, 2015 U.S. Dist. LEXIS 185160, at *15 (noting a "close question"); *In re Gonzalez*, 550 B.R. 711 (Bankr. E.D. Pa. May 19, 2016) ("The issue is a close one.")." Id. at 633.

While these cases from other jurisdictions are instructive, they are not binding on this Court. However, this Court believes that two decisions by the Eleventh Circuit Court of Appeals control the decision in this case. First, in the case of Comm. Fed. Mortg. Corp. v. Smith (In re Smith), 85 F.3d 1555 (11th. Cir. 1996), the mortgagee foreclosed on the debtor's real property in Alabama and purchased the property at the sale. The debtor then filed a Chapter 13 petition. The debtor's Chapter 13 plan proposed to reinstate the mortgage by paying the prepetition arrearage through the plan and making regularly monthly payments to the mortgagee outside the plan. The mortgagee filed a motion for relief to allow it to evict the debtor. The bankruptcy court denied the motion, holding that the debtor could exercise his right of redemption in his plan. The district court affirmed. On appeal, the Eleventh Circuit considered, "whether 11 U.S.C. § 1322(b) permits a debtor to exercise his state statutory right of redemption in a Chapter 13 plan by "curing" a default and "reinstating" a mortgage after a valid foreclosure sale on his property." Id. at 1557. The court explained that, under Alabama law, upon foreclosure, the purchaser at a foreclosure sale held legal title to the property, subject to the mortgagor's one year statutory right of redemption. Under Alabama law, to exercise that right of redemption, the mortgagor had to make a lump sum cash payment of the entire purchase price paid at the foreclosure sale. Id. at 1558. Recognizing that the debtor's right of redemption became property of the estate upon the filing of the petition, the court, nevertheless, held:

> [W]hen a debtor files for Chapter 13 bankruptcy following the foreclosure sale of his

> property, he can cure the default through an exercise of his Alabama statutory right of redemption. This right cannot be modified under a Chapter 13 plan, and it must be exercised as dictated under Alabama law by making a lump sum payment within one year of the foreclosure sale that includes the principal, interest and other charges under the mortgage.

Id. at 1561.

The second Eleventh Circuit case is TitleMax v. Northington (In re Northington), 876 F.3d 1302 (2017). In that case, the court considered the debtor's right to modify, under §1322(b)(2), his redemption rights under Georgia's title pawn statute. Under Georgia law, where a vehicle has been pledged for a loan from a pawnbroker, the debtor has a thirty day grace period after the maturity date of the loan within which to redeem the vehicle. O.C.G.A. § 44-14-403(b)(1). The grace period can be extended by additional thirty day periods by agreement of the parties. § 44-14-403(b)(2). The redemption price includes unpaid accrued fees and charges, plus principal and interest. § 44-14-403(b)(3). However, if the redemption price is not paid within the thirty day grace period, and any extensions thereof, title to the vehicle is, "automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item." Id.

In Northington, the debtor had pledged his car in exchange for a loan from TitleMax. The loan matured and, shortly before the thirty day grace period expired, the debtor filed Chapter 13. The bankruptcy court denied TitleMax's motion for relief from stay and confirmed the debtor's plan pursuant to which the debtor would pay the loan amount plus interest by monthly installments over the life of the plan. The district court affirmed.

On appeal, the parties agreed that the car became property of the estate upon the filing of the petition. Thus, the court concluded that the issue was, "whether, despite the expiration of the

9

prescribed grace period, [the car] remained in the estate at the time of the confirmation, such that TitleMax's rights in [the car] could be "modif[ied]" under Section 1322(b)(2)." Id. at 1310.

The court concluded that the debtor's property rights in the car were controlled by state law. Id. at 1311. Under Georgia law, those rights were extinguished if the car was not redeemed within the grace period. Id. Accordingly, the court concluded that:

> The question presented here is whether federal bankruptcy law changes all of that, prevents the ordinary and "automatic" operation of Georgia's pawn statute, and prohibits title to the [car] from passing, as it otherwise would, from [debtor] to TitleMax.
>
> To be clear, we are not concerned here with congressional power; Congress has extensive authority in the bankruptcy arena-including the authority to supercede state law. See U.S. Const. Art. I, § 8, cl. 4. Rather, the issue before us is whether Congress has in fact exercised that authority.

Id.

Applying the analysis prescribed by the Supreme Court in BFP v. Resolution Trust Corp., 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed. 2d 556 (1994), the court found that, under Georgia law, following the expiration of the redemption period, title to the car vested automatically in the pawnbroker. The court noted that Georgia law regarding the practice of pledging personal property for loans had been regulated by Georgia for more than a century. Id. at 1312. Finally, the court explained:

> [T]he Court in BFP clarified that while it is not strictly necessary for Congress to "override historical state practice expressly or not at all," and that the Bankruptcy Code can supercede state-law property rules "by implication," it may do so only "when the implication is unambiguous." BFP, 511 U.S. at 546, 114 S.Ct. 1757 (internal quotation marks omitted). "[W]here the intent to override is doubtful," the Court stressed, "our federal system demands deference to long-established traditions of state regulation."

Id.

10

The court rejected the debtor's argument that section 362(a) of the Code "froze" the rights of the parties. Rather:

> "[T]he majority view is that the automatic stay does not toll the running of redemption and reinstatement periods if the sale becomes effective without further action by any entity at the end of such period, and that relief for the debtor is to be found in the automatic 60-day extension of section 108(b)." (quoting 3 Collier on Bankruptcy ¶ 362.03 [[6][e]] (16th ed. 2017)).

Id. at 1313. The court held that:

> Properly understood, the Bankruptcy Code takes an estate's constituent property interests as it finds them. If an asset is by its state-law nature static, then it remains so in the bankruptcy estate. If, by contrast-as is often the case-state law imbues an estate asset with a sort of internal dynamism, then that characteristic will follow the asset into the estate....
>
> Think, for instance, about a debtor whose bankruptcy estate includes an option contract. If the debtor fails to exercise the option in accordance with state law, then the right to buy disappears. This case reflects the same basic phenomenon. Under Georgia's pawn statute, following his loan's maturity date, [the debtor] had a conditional right to possess the [car] as well as a right to redeem it during the statutory period. But after the expiration of the prescribed period, [the debtor] had no rights in the car, possessory or otherwise. Rather, his rights had been "automatically...extinguished" and "automatically forfeited to [TitleMax]". Ga. Code Ann. § 44-14-403(b)(3)....
>
> Because we hold that the car ceased to be property of the bankruptcy estate upon the expiration of the redemption period, it follows that 11 U.S.C. § 1322(b)(2)...has no field of application to this case. Under that provision, a Chapter 13 plan can "modify the rights of holders of secured claims" on property in the estate. 11 U.S.C. § 1322(b)(2). It is axiomatic, though, that a plan can "modify...rights" arising under a "claim" only if the claim exists at the time the plan would purport to modify the rights associated with it-namely at confirmation. Here, by the time the bankruptcy court confirmed [the debtor's] Chapter 13 plan...TitleMax didn't have a mere "claim"-it had (by operation of Georgia law) [the car].

Id. at 1314-15.

Applying the Northington analysis to the Georgia tax sale statute, Georgia law is clear that, once a barment notice is given pursuant to O.C.G.A. § 48-4-45, the debtor must redeem the

property by making a lump sum payment, in the amount prescribed by § 48-4-42, before the expiration of the redemption period or the redemption right is extinguished and the debtor no longer has any rights in the property. Tax sales and the right of the owner to redeem have been regulated by Georgia for a long time. Many of the sections of Georgia's tax sale and redemption statutes date back to the mid or late 1800's. As the court in Northington held, the Bankruptcy Code does not "freeze" the right of redemption. Rather, once the time of redemption (and an additional sixty days under section 108(b)) has expired, the property is no longer property of the estate and there is no "claim" that can be modified under section 1322(b)(2).

In this case, the barment notice was served on Debtor on February 19, 2021, before the petition was filed. The barment notice set the redemption termination date for 4:00 p.m. on March 22, 2021. Debtor filed her case at 11:16 a.m. on March 22, 2021. Pursuant to section 108(b), the termination date was extended sixty days to May 21, 2021. Because Debtor did not pay the redemption price on or before that day, Debtor's rights in the property were extinguished under state law and there is no longer any "claim" to be modified under section 1322(b)(2).[2]

Debtor argues that the delivery and service of the barment notice were ineffective because of the tax sale purchaser's failure to strictly comply with O.C.G.A. § 44-4-46. Specifically, Debtor argues that O.C.G.A. § 44-4-46(b) requires the barment notice to be delivered to the sheriff "...not less than 45 days before the date set in each notice for the expiration of the right to redeem." That date was February 5, 2021. However, the sheriff's office stamped the notice as "RECEIVED" on February 8, 2021, less than 45 days before the March 22, 2021 termination

---

[2] The Court expresses no opinion as to the right of a debtor to modify and pay, under section 1322(b)(2), the redemption amount when a barment notice which triggers the redemption period has not been sent prior to the filing of the debtor's petition.

date.

Relying on the cases of Union Central Life Ins. Co. v. Bank of Tignall, 182 Ga. 233, 185 S.E. 108 (1936) and Dixon v. Conway, 262 Ga. 709, 425 S.E. 2d 651 (1993), Debtor argues that Georgia courts have held that laws governing the right to redeem are to be construed liberally and most favorably to the person holding the right to redeem.[3]  However, Union Central has no application to this case.  In that case, the bank, which held a security deed against certain property, obtained judgment against the property owner.  The property was later sold at a tax sale.  After the redemption period expired, the tax sale purchaser voluntarily accepted the redemption amount and quitclaimed the property back to the property owner.  The bank then levied its judgment lien on the property.  The owner claimed that the title to the land it received after redemption was free of the bank's lien.  The Georgia Supreme Court, however, ruled that the title the owner received was subject to all liens existing at the time of the tax sale and ruled in favor of the bank.

Further, Dixon is inapplicable to this case.  There, the court ruled that the redemption period had not terminated because the barment notice was served on the property owner less than thirty days in advance of the termination date.  However, in the case at bar, Debtor was served with the barment notice on February 19, 2021, more than thirty days prior to the redemption termination date.

While Georgia courts do liberally construe the redemption statute, they have construed the statute to insure that, "constitutional due process requirements associated with

---

[3] Federal courts look to the decisions of the relevant state courts when interpreting a state's statute.  In re Schlein, 8 F.3d 745, 754 (11th Cir. 1993).

notification...must be met in order to properly foreclose an interested party's right to redeem a property." Mancuso v. TDGA, LLC, 301 Ga. 671, 672, 802 S.E.2d 248 (2017). It is clear that the deadlines contained in O.C.G.A. § 44-4-46(b) were designed to insure that the property owner receives at least thirty days notice of the redemption termination date. See Saffo v. Foxworthy, 286 Ga. 284, 287, 687 S.E.2d 463 (2009) (holding that O.C.G.A. § 44-4-46 had been satisfied because the former owners received "the requisite thirty days' notice"). As long as the due process requirements are met, the Georgia courts have allowed minor deviations from the literal terms of the statute. For instance, O.C.G.A. § 48-4-46(a) provides, in part:

> The notice provided for in Code Section 48-4-45 shall be written or printed, or written in part and printed in part, and shall be in substantially the following form:
>
> Take notice that:
>
> > The right to redeem the following described property, to wit: _____ will expire and be forever foreclosed and barred on and after the _____ day of _____, _____.

Nevertheless, the court in Mancuso, approved a notice which added, after the termination date, the language "or forty-five days after legal service of the notice, whichever is later." Mancuso, 301 Ga. at 673. The court held that, since the property owner had 45 days to exercise his right of redemption after receiving the notice, the tax sale purchaser had complied with the required notice procedure. Thus, even though the prescribed statutory form requires a specific termination date, and does not provide for setting the termination date at a time after legal service, the court nevertheless approved the use of such language.

Here, Debtor received more than thirty days notice of the termination date. Thus, the

constitutional due process requirements of the statute were met.[4]  Accordingly, the barment notice was effective to cause the running of the redemption period.  Because the property was no longer property of the estate at the time of confirmation and there was no "claim" that could be modified under section 1322(b)(2), the objection to confirmation by ETC is sustained and confirmation of Debtor's Chapter 13 plan is denied.  A separate order consistent with this opinion will be entered.

*END OF DOCUMENT*

---

[4] Because the Court has determined that the barment notice was sufficient to give Debtor her constitutional due process rights, the Court need not address ETC's argument regarding the date the United States Postal Service delivered the barment notice to the Jones County Sheriff.